IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| STATE FARM FIRE AND CASUALTY COMPANY, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | Civil Action No. 16-35 |
| v. | ) |  |
|  | ) | Judge Cathy Bissoon |
| A.S., *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**MEMORANDUM AND ORDER**

For the reasons stated more fully below, Plaintiff State Farm Fire and Casualty Company's Motion for Summary Judgment (Doc. 10) will be granted in part and denied as moot in part.[1]

## I. MEMORANDUM

**BACKGROUND**

State Farm Fire and Casualty Company ("Plaintiff" or "State Farm") seeks a declaration, pursuant to the Declaratory Judgment Act, 28. U.S.C. § 2201, *et. seq.*, that it has no duty to defend or indemnify Defendant A.S. for the Underlying Action captioned <u>Jane Doe, a minor, by and through her parents and natural guardians, Mary Joe and John Doe v. Neshannock Township School District</u>, *et al.*, Civil Action No. 15-1089, under State Farm Homeowners Policy No. 38-

---

[1] A moving party is entitled to summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). While all reasonable inferences must be drawn in favor of the nonmoving party, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment." <u>Halsey v. Pfeiffer</u>, 750 F.3d 273, 287 (3d Cir.2014) (quotation marks omitted). <u>See</u> also <u>In re Asbestos Prod. Liab. Litig. (No. VI)</u>, No. 15-1988, 2016 WL 4750507, at *3 (3d Cir. Sept. 13, 2016).

LF-1916-0 and that it has no obligation to Defendants A.S., Anthony Staph or Shellie Staph for any portion of any award that constitutes punitive damages. (See Pl.'s Mot. (Doc. 10)). The underlying action was initiated by a classmate of A.S.'s, Jane Doe, who alleges that A.S. and three other classmates sexually assaulted her during a Neshannock High School field trip.

Plaintiff argues that its "duty to defend, as it is defined under Pennsylvania law, has not been triggered as to Defendant A.S., as the Underlying Complaint does not allege that A.S. engaged in conduct that could be considered accidental and thus there was no occurrence as is required by the policy." The Underlying Complaint asserts seven counts in total, with three pertaining specifically to the Defendant A.S.[2] The relevant general factual allegations in the Underlying Complaint are as follows:

> 46. As Jane Doe slept, defendants G.R., T.S., A.S. and D.R. conspired to touch plaintiff's body without her permission until she awoke.

---

[2] Count V asserts a cause of action for negligent supervision against the parents/guardians of the minor students, including Anthony and Shellie Staph. In an Order granting Anthony and Shellie Staph's Motion for Judgment on the Pleadings, the Court dismissed Count V of the underlying Complaint as to those Defendants. (Doc. 90 at Civil Action No. 15-1089). Therefore, the Court need not address the coverage question as to Count V. Under Pennsylvania law, an insurer's duty to defend ends when the insurer can prove it has no duty to indemnify its insured on any claims remaining in the underlying action. See Utica First Ins. Co. v. Maclean, No. CIV.A. 08-1138, 2009 WL 415988, at *6 (E.D. Pa. Feb. 19, 2009) ("If the allegations in a complaint trigger an insurer's duty to defend, the insurer must defend until 'it [can] confine the claim to a recovery that the policy [does] not cover.'") (quoting D'Auria v. Zurich Ins. Co., 507 A.2d 857, 859 (Pa. Super. Ct. 1986)); Biborosch v. Transamerica Ins. Co., 603 A.2d at 1055, 1058 (Pa. Super. Ct. 1992) ("[T]he insurer must defend until the suit is narrowed only to claims that are definitely not within that coverage."). Thus, "[a]lthough a complaint triggers an insurer's duty to defend, that duty 'is not necessarily frozen in stasis,' and it can end when the insurer can prove that its policy does not obligate it to indemnify the insured." MacLean, 2009 WL 415988, at *6 (quoting State Farm Fire & Casualty Co. v. Cooper, No. Civ. A. 00–5538, 2001 WL 1287574, *3 (E.D. Pa. Oct.24, 2001) (internal quotation marks omitted). See also Comm. Union Ins. Co. v. Pittsburgh Corning Corp., 789 F.2d 214, 218, 220 (3d Cir.1986) ("There is no principle of Pennsylvania law that the duty to defend automatically 'attaches' at the outset of the litigation and cannot afterwards terminate.") (court holding that an insurance company's duty to defend its insured terminated with its duty to indemnify). Accordingly, because A.S.'s parents have been dismissed from the Underlying Action, Plaintiff's Motion for Summary Judgment insofar as it seeks declarations related to Anthony and Shellie Staph will be denied as moot.

47. At or around 12:15 a.m., Jane Doe awoke to T.S.'s hand rubbing her vaginal region over Jane Doe's pants, and G.R. touching her buttocks under her pants, while A.S. and D.R. coached the acts.

48. When Jane Doe awoke, T.S. and G.R. immediately stopped touching Jane Doe and returned to their respective seats.

49. Following the assault, Jane Doe moved to the seat in front of her, and sat with her friend and fellow student on the trip, H.B., whereby Jane Doe sobbed the entire way home.

50. Jane Doe's previous seatmate, P.L., became aware of the assault and walked to the front of the bus in an attempt to inform defendant chaperones of the incident.

51. A.S. forcibly stopped P.L., and prevented P.L. from walking to the front of the bus to inform defendant chaperones of the incident.

52. At or around 2:00 a.m., the bus arrived at Neshannock where parents waited to pick up their children.

53. As Jane Doe exited the bus, defendant A.S. stopped her, telling her not to tell her parents or school officials, as he and Jane Doe's boyfriend would 'work things out.'

(Pl.'s Conc. Stmnt. (Doc. 12) at ¶ 6 (citing Doc. 1 of Civil Action 15-1089)).

Count IV of the Underlying Complaint asserts a cause of action for assault and battery against A.S. and three other minor students. The count specific allegations include that they "intended to cause and did cause a harmful contact with plaintiff Jane Doe's person," and that Jane Doe "did not consent to defendants' acts." (Doc. 12 at ¶ 8) (citing Doc. 1 at ¶¶ 86-87 of Civil Action 15-1089). Count VI asserts a cause of action for intentional infliction of emotional distress against A.S. and the three other minor students. The count specific allegations include that they "acted intentionally and recklessly for the purpose of causing plaintiff to suffer humiliation, mental anguish and extreme emotional physical distress," and that these acts "were done maliciously, fraudulently and oppressively with the wrongful intent of injuring plaintiff" and with "improper and evil motive amount[ing] to malice and conscious disregard of plaintiff's

3

rights." (Doc. 12 at ¶ 9) (citing Doc. 1 at ¶¶ 104, 107 of Civil Action 15-1089). Count VII asserts a cause of action for negligent infliction of emotional distress against A.S. and the other three minor students. All three relevant counts include requests for punitive damages. The count specific allegations include that the actors "knew or reasonably should have known that the conduct described herein would and did proximately result in physical and emotional distress to plaintiff." (Doc. 12 at ¶ 10) (citing Doc. 1 at ¶ 109 of Civil Action 15-1089).

Plaintiff issued Homeowners Policy number 38-LF-1916-0 ("the Policy") to Anthony and Shellie Staph for the policy period from January 17, 2013 through January 27, 2014. (Doc. 12 at ¶ 1.) With respect to personal liability coverage, the Policy provides as follows:

> **COVERAGE L – PERSONAL LIABILITY**
>
> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:
>
> 1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice . . . Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

(Doc. 12 at ¶ 2) (citing Compl. (Doc. 1) Exh. A) (emphasis in original).

The Policy defines "occurrence" as follows:

> **DEFINITIONS**
> …
> 7. "**occurrence**", when used in Section II [describing personal liability coverage] of this policy, means an accident, including exposure to conditions, which first results in:
>
>     a.   **bodily injury**; or
>     b.   **property damage**;

4

during the policy period.  All **bodily injury** and **property damage** resulting from one accident, series of related accidents or from continuous or related exposure to the same general conditions is considered to be an **occurrence**.

(Doc. 12 at ¶ 3) (citing Compl. (Doc. 1) Exh. A) (emphasis in original).

## ANALYSIS

As a preliminary matter, the Court agrees with Plaintiff that under Pennsylvania law and as a matter of public policy, punitive damages are not covered under Pennsylvania insurance policies.  (See Pl.'s Br. at 13) (citing Aetna Cas. & Surety Co. v. Roe, 650 A.2d 94, 100 (Pa. Super. Ct. 1994).  Accordingly, the Court will grant Plaintiff's Motion insofar as it seeks a declaration that there is no coverage available to Defendant A.S. under the Policy for any portion of any award that constitutes punitive damages.

Under Pennsylvania law,[3] "[a]n insurer's duty to defend an insured in litigation is broader than the duty to indemnify." Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999) (citing Erie Ins. Exch. v. Claypoole, 673 A.2d 348, 355 (Pa. Super. Ct. 1996)). The "obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy." Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320, 322 (Pa. 1963) (emphasis in original).  "If a single claim in a multi-claim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the

---

[3] A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the forum state's choice-of-law rules. Erie R.R. Co. v. Thompkins, 304 U.S. 64 (1939); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Under Pennsylvania choice of law rules, claims arising from an insurance policy are governed by the law of the state in which the policy was delivered. CAT Internet Servs., Inc. v. Providence Wash. Ins. Co., 333 F.3d 138, 141 (3d Cir. 2003); Prudential Ins. Co. of Am. v. Prusky, No. CIV.A. 04-0462, 2008 WL 859217, at *17 (E.D. Pa. Mar. 31, 2008).  Here, the parties' dispute concerns the terms of a renter's insurance policy delivered in Pennsylvania, and all parties appear to agree that Pennsylvania law applies. Inasmuch as Pennsylvania law governs this action, we treat Pennsylvania Supreme Court opinions as binding precedent and Pennsylvania Superior Court opinions as persuasive precedent.  See State Farm Fire & Cas. Co. v. Mehlman, 589 F.3d 105, 107 n.2 (3d Cir. 2009).

underlying plaintiff could recover on a covered claim." Frog, Switch & Mfg. Co., 193 F.3d at 746 (citing Erie Ins. Exch. v. Transamerica Ins. Co., 533 A.2d 1363, 1368 (Pa. 1987)). The duty to defend continues until such time as the claim is limited to relief that the policy does not cover. Gen. Acc. Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997). Conversely, if an injured party's complaint does not potentially come within the coverage of the policy, the duty to defend is not activated. See Erie Ins. Exch. v. Claypoole, 673 A.2d 348, 355-56 (Pa. Super. Ct. 1996) ("[O]nly allegations contained within the underlying complaint pertaining to injuries which are either actually or potentially within the scope of the insurance policy obligate the insurer to defend the insured.").

A court ascertaining whether an insurer has a duty to defend its insured makes its determination by defining the scope of coverage under the insurance policy on which the insured relies and comparing the scope of coverage to the allegations of the underlying complaint. Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 673 (3d Cir. 2016); Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997). If the allegations of the underlying complaint potentially could support recovery under the policy, there will be coverage at least to the extent that the insurer has a duty to defend its insured in the case. Ramara, Inc., 814 F.3d at 673; Gen Accident Ins. Co. of Am., 692 A.2d at 1095. In determining the scope of coverage, "the particular cause of action that a complainant pleads is not determinative," and instead, "it is necessary to look at the factual allegations contained in the complaint." Mut. Benefit Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999).

The insured has the initial burden of establishing coverage under an insurance policy. Butterfield v. Giuntoli, 670 A.2d 646, 651–52 (Pa. Super. Ct. 1995). If coverage is established,

6

the insurer then bears the burden of proving that an exclusion applies. Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999).

The Court's first task, as noted, is to ascertain the scope of the policy's coverage. Interpretation of an insurance policy is a question of law for the Court, and the Court's "primary goal . . . is to ascertain the parties' intentions as manifested by the policy's terms." Liberty Mut. Ins. Co. v. Sweeney, 689 F.3d 288, 293 (3d Cir. 2012) (quoting Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006)).

In this case, coverage for bodily injury claims is triggered only by an "occurrence," which is defined to mean an "accident." Thus, the policy's "bodily injury" coverage only applies to the extent the sexual assault of Jane Doe was an "accident." Although the term "accident" is not further defined in the policy, Pennsylvania law supplies meaning to that term, as recently explained by the Court of Appeals for the Third Circuit:

> In Donegal Mutual Insurance Co. v. Baumhammers, the Supreme Court of Pennsylvania said that, when "accident" is undefined in an insurance policy, Pennsylvania courts should treat the term as "refer[ing] to an unexpected and undesirable event occurring unintentionally ...." 595 Pa. 147, 938 A.2d 286, 292 (2007). [T]he key term in the definition of the "accident" is "unexpected" which implies a degree of fortuity. An injury therefore is not "accidental" if the injury was the natural and expected result of the insured's actions.... See also Minnesota Fire and Cas. Co. v. Greenfield, 579 Pa. 333, 855 A.2d 854, 870 (2004) ("'Accident' has been defined in the context of insurance contracts as an event or happening without human agency or, if happening through such agency, an event which, under circumstances, is unusual and not expected by the person to whom it happens.") (internal citations omitted). That definition comports with the basic purpose of insurance: "to cover only fortuitous losses." United Servs. Auto. Ass'n v. Elitzky, 358 Pa.Super. 362, 517 A.2d 982, 986 (1986).

Auto-Owners Ins. Co. v. Stevens & Ricci Inc., No. 15-2080, 2016 WL 4547641, at *11 (3d Cir. Sept. 1, 2016). In other words,

> [a]n accident, simply stated, is merely an unanticipated event; it is something which occurs not as the result of natural routine but as the culmination of forces working without design, coordination or plan. And the more disorganized the

> forces, the more confusedly they operate, the more indiscriminately haphazard the clash and intermingling, the more perfect is the resulting accident.

State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009) (citing Brenneman v. St. Paul Fire & Marine Ins. Co., 192 A.2d 745, 747 (Pa. 1963)). "Moreover, '[q]ualification of a particular incident as an accident seems to depend on two criteria: 1. the degree of foreseeability, and 2. the state of mind of the actor in intending or not intending the result." Id. (citing Black's Law Dictionary 16 (9th ed. 2009)) (alteration in the original).

In determining whether the injury in question resulted from an accident, the Court must view the operative events from the perspective of A.S, since State Farm insured him and not Jane Doe. Estate of Mehlman, 589 F.3d at 111. Whether the events were unexpected from the victim's point of view is therefore irrelevant. See id. ("Accordingly, it is of no significance in our analysis that the events in question were unexpected, as they surely must have been, when viewed through the eyes of [the victim].").

With this understanding in mind, the Court must compare the scope of coverage to the allegations in the Underlying Complaint. The analysis is driven not by the causes of action pled, but by the factual allegations set forth in the complaint. See Haver, 725 A.2d at 745. Here, despite one of the relevant counts in the Underlying Complaint encompassing the term "negligence," it is clear that any injury suffered by Jane Doe was not "accidental." Sexual assault does not happen by accident. Moreover, the Underlying Complaint alleges that the students "conspired" with one another to engage in the conduct together. (Doc. 12 at ¶ 6) (citing Doc. 1 ¶ 46 of Civil Action No. 15-1089). Collectively, the students engaged in purposeful conduct resulting in harm to Jane Doe. Additionally, and as Plaintiff points out, "Defendants themselves have admitted that the facts asserted against A.S. do not allege accidental behavior."

(Doc. 15 at 3) (citing Doc. 14 at ¶¶ 12, 14, 16). There remains no dispute as to whether the facts alleged in the Underlying Complaint describe an accident – they simply do not.

As the language in the Policy is clear that State Farm's duty to defend extends only to an "occurrence," which is defined by the Policy as an accident, and because the Court finds the allegations in the Underlying Action do not describe accidental behavior, the Court finds that State Farm has no duty to defend A.S. in the Underlying Action, Civil Action No. 15-1089. Accordingly, Plaintiff's Motion for Summary Judgment as it relates to State Farm's duty to defend A.S. in the Underlying Action will be granted.

## II. ORDER

For the reasons stated more fully above, IT HEREBY IS ORDERED that Plaintiff's Motion for Summary Judgment (**Doc. 10**) is **GRANTED IN PART AND DENIED AS MOOT IN PART**. Plaintiff's Motion is GRANTED as it relates to State Farm's duties to A.S. Plaintiff's Motion is DENIED AS MOOT as it relates to State Farm's duties to Defendants Anthony and Shellie Staph.

IT IS FURTHER ORDERED that Plaintiff State Farm Fire and Casualty Company has no obligation to defend or indemnify A.S. for the underlying action captioned <u>Jane Doe, a minor, by and through her parents and natural guardians, Mary Doe and John Doe v. Neshannock Township School District, et al.</u>, Case No. 2:15-cv-01089, United States District Court for the Western District of Pennsylvania, under State Farm Homeowners Policy No. 38-LF-1916-0.

IT IS FURTHER ORDERED that Plaintiff State Farm Fire and Casualty Company has no obligation to A.S., for any portion of any award that constitutes punitive damages.

IT IS SO ORDERED.

December 28, 2016                    s/Cathy Bissoon
                                     Cathy Bissoon
                                     United States District Judge

cc (via ECF email notification):
    All Counsel of Record